United States District Court
District of Massachusetts

```
_____
                                  )
KELLY LEWIS and ALAN LEWIS        )
        Plaintiffs,               )
                                  )
             v.                   )   Civil Action No.
                                  )   08-11508-NMG
FEDERAL DEPOSIT INSURANCE         )
COMPANY, as RECEIVER OF           )
WASHINGTON MUTUAL BANK,           )
        Defendant.                )
_____
```

**MEMORANDUM & ORDER**

**GORTON, J.**

In this deceptive lending practices case, defendant Federal Deposit Insurance Corporation ("FDIC"), as receiver of Washington Mutual Bank, has moved to dismiss for lack of subject matter jurisdiction. The plaintiffs have moved to amend their complaint to add claims against several other defendants, in response to which FDIC has filed a cross-motion to stay.

I.  **Background**

On August 18, 2008, Alan and Kelly Lewis ("the plaintiffs"), homeowners residing in Boston, Massachusetts, filed an eight-count complaint against their FDIC-insured mortgage lender, Washington Mutual Bank, FA ("WaMu"), in the Massachusetts Superior Court Department for Suffolk County. The plaintiffs alleged that WaMu had engaged in deceptive lending practices, inducing them to enter into a residential mortgage loan that

-1-

conferred substantial financial benefits to WaMu at the plaintiffs' expense.

On September 3, 2008, WaMu removed the case to this Court on diversity grounds. Three weeks later, by order of the Office of Thrift Supervision, WaMu was declared insolvent and the FDIC was appointed its receiver. The Court allowed the FDIC to be substituted for WaMu as the defendant in this case in October, 2008, and, at that time, stayed the proceedings for 90 days pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), codified in scattered sections of Title 12 of the United States Code. See 12 U.S.C. § 1821(d)(12)(A)-(B)(requiring a 90-day stay in any judicial action to which a receiver for an insured depository institution becomes a party). On April 6, 2009, the Court extended the stay until July 6, 2009.

Pursuant to 12 U.S.C. § 1821(d)(3)(B)(i), the FDIC published several notices in the Wall Street Journal (the first of which appeared in October, 2008) advising creditors of WaMu to present all claims they had against WaMu by December 30, 2008 ("the claims bar date"). On January 8, 2009, the plaintiffs sent a letter to the FDIC stating that they were pursuing a claim against WaMu. The FDIC received that letter on January 13, 2009, and, by law, the statutory period of 180 days to allow or disallow the claim ran from that date. See 12 U.S.C.

§ 1821(d)(5).[1]

On June 8, 2009 (within the 180-day statutory period), the FDIC notified the plaintiffs that it was disallowing their claim. Pursuant to 12 U.S.C. § 1821(d)(6), once a claimant receives a notice of disallowance, it has 60 days either 1) to file suit on that claim or 2) to "continue" an action commenced before the appointment of the receiver.  In this case, the 60-day period lapsed on August 7, 2009.

On September 8, 2009, in the absence of any new pleading, the FDIC moved to dismiss the plaintiffs' claims for lack of subject matter jurisdiction on the grounds that the plaintiffs had failed to file a new case against the FDIC or to "continue" their pending case within the 60-day period.  The plaintiffs have opposed that motion and moved to amend the complaint to add claims against several other defendants.

**II. <u>Legal Analysis</u>**

    **A.   FDIC's Motion to Dismiss for Lack of Jurisdiction (Docket No. 23)**

        **1.   Legal Standard**

The FIRREA states, in relevant part,

> If any claimant fails to ... file suit on such claim (or continue an action commenced before the appointment of the receiver), before the end of the 60-day period ... the claim shall be deemed to be disallowed ... and

---

[1] The fact that the plaintiffs missed the claims bar date has not been interposed as a defense and apparently is not an issue in this case.

>     the claimant shall have no further rights or remedies
>     with respect to such claim.

12 U.S.C. § 1821(d)(6)(B). The 60-day period begins to run upon the FDIC's disallowance of the claim. Id. at (d)(6)(A). In the instant case, that period expired on August 7, 2009.

### 2. Application

The FDIC argues that the case must be dismissed because the plaintiffs failed to "continue" their pending lawsuit within 60 days of the FDIC's disallowance of their claim.[2] The FDIC arrives at that conclusion by construing the statute's "continuation" requirement to mandate that the plaintiffs take an "affirmative action" in furtherance of their claim, such as the filing of a motion to renew or reactivate the case. Here, the FDIC contends that, because the plaintiffs did not file such a motion during the 60-day period, the Court no longer has jurisdiction over the plaintiffs' claims.

The plaintiffs offer three arguments in response. First, they maintain that the FIRREA does not mandate that they take any affirmative action in order to "continue" their case. Second, they assert that, even if the Court were to adopt the so-called "affirmative action" requirement, it was satisfied by their

---

[2] The plaintiffs did not file a new lawsuit and thus, for the purposes of determining whether they complied with § 1821(d)(6), the only relevant inquiry is whether they "continued" the suit that was pending in this Court.

-4-

counsel's correspondence with the FDIC's counsel during the 60-day period.  Finally, the plaintiffs assert that the FDIC should be estopped from pursuing its motion to dismiss on account of several contradictory and confusing communications that it allegedly sent to plaintiffs' counsel.

The plaintiffs' third argument is the least persuasive. Apparently, on June 11, 2009, plaintiffs' counsel received two letters from the FDIC.  The first letter, dated June 4, 2009, requested an extension of time (until January 8, 2010) for the FDIC to complete its review of the plaintiffs' claim.  The second letter, dated June 8, 2009, (but received by the plaintiffs' attorney on the same day as the first letter) was a notice of disallowance of the claim.  The second letter, invoking the language of 12 U.S.C. § 1821(d)(6), stated, in pertinent part:

> if you do not file a lawsuit (or continue any lawsuit commenced before the appointment of the Receiver) before the end of the 60-day period, the disallowance will be final.

Plaintiffs' counsel claims that as a result of receiving the two conflicting letters on the same day, he was confused about 1) the status of the administrative review of his claim and 2) when the 60-day period began to run.[3]  He asserts, therefore, that the FDIC should be estopped from "attempting to benefit" from the

---

[3] Plaintiffs' attorney now faults the FDIC for its failure to clarify which letter was controlling, but he did not express his confusion or ask for clarification at any earlier time.

confusion "caused by its own actions".

The plaintiffs' estoppel argument is tenuous for several reasons. First, even though plaintiffs' counsel received the two letters on the same date, the disallowance letter was dated four days after the extension request letter. Accordingly, it would have been reasonable to conclude that the disallowance letter controlled, especially given that the plaintiffs never consented to the extension requested in the first letter.

Moreover, even if the FDIC's conduct created confusion as to the status of the administrative review of the claim, the circumstances of the case do not warrant the application of estoppel. As the FDIC points out, invoking estoppel against the government (and, by extension, the FDIC) is highly disfavored. See Royal Siam Corp. v. Chertoff, 484 F.3d 139, 148 (1st Cir. 2007). It is applied only in "the most extreme circumstances" and never absent proof that the government has engaged in "affirmative misconduct". Mimiya Hospital, Inc. SNF v. U.S. Dep't of Health and Human Services, 331 F.3d 178, 183 n. 1 (1st Cir. 2003); Dantran v. U.S. Dep't of Labor, 171 F.3d 58, 67 (1st Cir. 1999). In this case, there is absolutely no indication that the FDIC engaged in affirmative misconduct and, therefore, it will not be estopped from pursuing its motion to dismiss.

The plaintiffs' preceding statutory arguments are more persuasive. They admit that they did not file anything with the

Court within 60 days after their receipt of the notice of disallowance but they contend that they are entitled to continue the pending litigation nonetheless. The FDIC responds that the plaintiffs' failure to file a renewal motion with the Court precludes the Court from exercising jurisdiction over the case.

The parties' dispute reflects a general disagreement regarding the proper meaning of the phrase "to continue" as used in the FIRREA. Courts have differed dramatically in their interpretations, leading a Louisiana court to lament, "[t]here is no unambiguously correct answer to this question of statutory interpretation." Rey v. Oak Tree Savings Bank, 817 F. Supp. 634, 636 (E.D. La. 1993). As the FDIC indicates, many courts have interpreted the phrase to imply that some kind of "affirmative action" is necessary to continue an action commenced before the appointment of a receiver. See, e.g., Lakeshore Realty Nominee Trust v. FDIC, 1994 WL 26913 at * 1 (D.N.H. May 25, 1994) (dismissing case where plaintiff "did nothing" to reactivate his claim); First Union Nat'l Bank of Florida v. North Beach Professional Office Complex, Inc., 841 F. Supp. 399, 404 (M.D. Fla. 2003) (dismissing claims where plaintiff failed to take "affirmative action" within 60 days). Other courts have expressly rejected the notion that an affirmative action is required to keep an action "alive". See, e.g., New Bank of New England v. Callahan, 798 F. Supp. 73, 76 (D.N.H. 1992) ("Neither

the statute nor relevant case law indicates any affirmative action is necessary to 'continue' an action").

To support their interpretation of the FIRREA, the plaintiffs direct the Court's attention to the case of Marquis v. F.D.I.C, 965 F.2d 1148 (1st Cir. 1992), which they contend stands for the proposition that pre-receivership actions that are stayed during the administrative review process are automatically resumed without any affirmative steps on the part of the plaintiff.  As the FDIC suggests, the plaintiffs' reading of the Marquis decision is superficial.  The question before the Court of Appeals in that case was whether the FIRREA requires federal courts automatically to dismiss actions pending against failed financial institutions at the time the FDIC is appointed as receiver.  The Court answered that question in the negative, holding that "claims can simply be resumed" following a stay for administrative review.  The Court did not, however, offer guidance as to what action on the plaintiff's part was required to "resume" the action once the stay expired. It did note (albeit in dicta), that Congress' choice of the word "continue," as opposed to a more active verb such as "recommence" or "re-file," supported the court's more flexible interpretation of the FIRREA's provisions.[4]  Therefore, although the First Circuit has

---

[4] The First Circuit's analysis of the word "continue" relates to a different provision of the FIRREA than the one at issue in this case but the reasoning is analogous because both

not definitively ruled on whether the FIRREA requires a plaintiff to take an "affirmative action" to "continue" an action, it has espoused a relatively liberal view of what is required to retain jurisdiction of pre-receivership claims.

The plaintiffs next assert that even if the Court were to adopt an "affirmative action" requirement, their counsel's correspondence with the FDIC satisfied it. As previously discussed, federal courts have interpreted the FIRREA's "continuation requirement" inconsistently. Even among the courts which have required an "affirmative action" on the part of the plaintiff, the nature of the "action" required has varied greatly. For example, a New York court mandated the filing of a "reactivation affidavit," whereas a Florida court found that the claimants have the "simple burden of notifying the Court of the denial of their claims" and "request[ing] that the stay be lifted." Compare Mitchell v. Greenwood Bank of Bethel, Inc., 827 F. Supp. 106, 109 (N.D.N.Y. 1993) with Southeast Bank v. Gold Coast Graphics Group, 149 F.R.D. 681, 685 (S.D. Fla. 1993).

In this case, the plaintiffs' attorney exchanged several emails with FDIC's counsel during the 60 days following the

---

provisions include the same language. Compare 12 U.S.C. § 1821(d)(12)(A) ("the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of a receiver") with 12 U.S.C. § 1821(d)(6) ("If any claimant fails to ... file suit on such claim (or continue an action commenced before the appointment of the receiver)...") (emphasis added).

FDIC's disallowance of their claim. In those emails, plaintiffs' counsel informed the FDIC of the plaintiffs' intent to pursue their pending claims. For example, on July 8, 2009, Attorney Matthew Dunn ("Dunn"), counsel for the plaintiffs, sent an email to Attorney Kevin Scanlon ("Scanlon"), counsel for the FDIC, explaining that he was in the process of amending the plaintiffs' complaint to add the current loan owner and servicer as defendants (and possibly dismiss the FDIC from the action). Scanlon acknowledged receipt of the email on that same day and followed up several weeks later, inquiring whether the plaintiffs had decided to dismiss the claims against the FDIC. Dunn responded the next day (while apparently on his honeymoon in Ireland), apologizing for the delay and promising a more definite response within a few weeks.

The plaintiffs contend that those communications, coupled with their extensive efforts to discover facts pertaining to the litigation, are sufficient to satisfy an affirmative action requirement, if one exists. The FDIC responds that an "affirmative action" must involve some kind of notice to the court, not simply email communications between counsel. Otherwise, the FDIC maintains, cases would linger on courts' dockets for months, a result that would be contrary to Congress' objective of resolving claims in a prompt and orderly fashion. The FDIC does not, however, offer any binding authority to

support that proposition, relying primarily on policy arguments and legislative intent.  Although many courts have required plaintiffs to file a motion or notice to the court to continue their cases, that requirement does not appear in the FIRREA nor has it been mandated by the First Circuit.  It would, therefore, be reasonable to conclude that the parties' email communications sufficed to "continue" the case, particularly given that those emails put the FDIC on notice of the plaintiffs' intent to pursue the litigation.

### B. Plaintiffs' Motion for Leave to Amend Complaint (Docket No. 27) and Defendants' Cross-Motion to Stay (Docket No. 31)

#### 1. Legal Standard

Fed. R. Civ. P. 15(1)(B) allows parties to amend pleadings as a matter of course within 21 days after service of a responsive pleading or a Rule 12(b) motion.  In all other circumstances, consent to file amended pleadings "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a)(1)(B), "unless the amendment would be futile or award undue delay." Adorno v. Crowley Towing and Transportation Co., 443 F.3d 122, 126 (1st Cir. 2006).

#### 2. Application

Two weeks after the FDIC filed its motion to dismiss for lack of jurisdiction, the plaintiffs moved for leave to amend their complaint to add three defendants: 1) Bank of America, as

the Trustee of WaMu Mortgage Pass-Through Certificate 2007-OA2 Trust ("the Trust"), the owner of the plaintiffs' mortgage, 2) Washington Mutual Mortgage Securities Corporation, the beneficiary of the Trust, and 3) JPMorgan Chase Bank, N.A. ("JPMorgan"), the servicer of the plaintiffs' mortgage. The plaintiffs wish to assert a variety of claims against the new defendants, including unjust enrichment, breach of the covenant of good faith and fair dealing, ratification of fraud and aiding and abetting fraud, and also seek to enjoin them from taking further action to enforce rights under the mortgage.

In support of their motion to amend the complaint, the plaintiffs state that they only recently learned that 1) the Trust is the owner of the disputed loan in this case, 2) JPMorgan functions as the loan's servicer and 3) Washington Mutual Mortgage Securities Corporation is the beneficiary of the Trust. As such, all three of those entities, by their receipt and acceptance of the plaintiffs' mortgage loans, are the beneficiaries of the alleged fraud perpetrated against the plaintiffs. The plaintiffs contend that adding those three entities as defendants will conserve judicial resources by avoiding multiple lawsuits and will not prejudice any of them because the statute of limitations on the plaintiffs' claims has not yet expired.

The FDIC has responded by filing a cross-motion to stay in

which it urges the Court to postpone ruling on the plaintiffs' motion to amend the complaint until after it rules on the FDIC's motion to dismiss. However, the only grounds upon which the FDIC opposes the plaintiffs' motion to amend their complaint is the (quite obvious) possibility that if the Court allows the FDIC's motion to dismiss, the plaintiffs' motion will be rendered moot (because there will no longer be a complaint to amend). Because the Court will deny the FDIC's motion to dismiss, it will also allow the plaintiffs' motion to amend the complaint and deny the FDIC's cross-motion to stay as moot.

**ORDER**

In accordance with the foregoing,

1) Defendant's motion to dismiss (Docket No. 23) is **DENIED;**

2) Plaintiffs' motion for leave to amend complaint (Docket No. 27) is **ALLOWED;** and

3) Defendant's cross-motion to stay (Docket No. 31) is **DENIED** as moot.

**So ordered.**

                                  /s/ Nathaniel M. Gorton
                                  Nathaniel M. Gorton
                                  United States District Judge

Dated April 13, 2010